UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

EDWARD F. DAVIS,

              Plaintiff,                   12 Civ. 1678

   -against-                          OPINION

CITIBANK, N.A.,

              Defendant.

------------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-15-13

       Attorneys for the Defendant

       ZEICHNER ELLMAN & KRAUSE LLP
       575 Lexington Avenue
       New York, NY 10022
       By:  Barry J. Glickman, Esq.
           Greg M. Bernhard, Esq.


       Pro Se
       EDWARD F. DAVIS

**Sweet, D.J.**

Defendant Citibank, N.A. ("Citibank" or the "Defendant") has moved pursuant to Rule 37 of the Federal Rules of Civil Procedure to strike and/ or dismiss the complaint of pro se plaintiff Edward F. Davis ("Davis" or the "Plaintiff") and grant Citibank default judgment on its counterclaim. Plaintiff has requested an extension of discovery without stipulation.

Upon the facts and conclusions set forth below, the Defendant's motion is granted in part and denied in part, and the Plaintiff's request is denied.

**Prior Proceedings & Facts**

The facts underlying this action were previously set forth in this Court's opinion dated March 7, 2013.  See Davis v. Citibank, N.A., No. 12 Civ. 1678, 2013 WL 866862 (S.D.N.Y. Mar. 8, 2013) (the "March 7 Opinion").  The facts relevant to the instant motions are summarized below, and familiarity with the general background of this case and prior litigation between the parties is assumed.

In April 2009, Citibank used a Sears branded credit card account to the Plaintiff (the "Account").  In October 2010, Plaintiff failed to make the minimum monthly payments due on the Account.

As a result of the Plaintiff's payment defaults, on September 26, 2011, Citibank commenced an action, seeking to recover a sum in excess of $6,664.09, which was due in connection with the Account.  See Citibank, N.A. v. Edward F. Davis, No. CV-11-1015, City Court of the City of Newburgh (the "City Court Action").

On December 30, 2011, Plaintiff served an answer to the City Court Action.  On October 21, 2011, instead of asserting a counterclaim in the City Court Action, Plaintiff commenced an action in New York County, in which he alleged "multiple violations of consumer credit act and overcharges." Edward F. Davis v. Citibank, N.A., No. 3362 NSC 2011, Civil Court, New York County (the "Small Claims Action").

On February 13, 2012, Plaintiff commenced another action in New York County.  Edward F. Davis v. Citibank, N.A.,

No. 101622/12, Supreme Court, New York County (the "State Court
Action").  In the State Court Action complaint, Plaintiff
alleged that Citibank used "unfair . . ., unconscionable . . .
and harassing, threatening and otherwise abusive conduct" to
collect a debt (State Court Action Compl. ¶¶ 8, 9).  In
addition, Plaintiff alleges violations of "consumer credit
protection laws" (Id. ¶ 3).  On March 7, 2012, Citibank removed
the State Court Action to this Court.

At the time Plaintiff commenced the State Court Action
he represented to Citibank that he would execute a stipulation
of discontinuance of the Small Claim Action.  Plaintiff advised
the court in the Small Claims Action of his intention to do so,
in order for his claims could be resolved in one action and in
one forum.  Accordingly, counsel for Citibank in the City Court
Action sent Plaintiff stipulations of discontinuance for both
the Small Claims Action and the City Court Action.

By a notice of motion dated March 21, 2012, Plaintiff
sought leave to amend the complaint in the instant action to
assert claims against Citibank of harassment and unfair debt
collection practices.  On March 28, 2012, Citibank wrote to the
Court regarding its desire to assert its claim from the City

Court Action against Plaintiff in a counterclaim once the City

Court Action, Small Claims Action and State Court Action were

each dismissed and requested a conference with the Court to

address Citibank's counterclaim and Plaintiff's motion to amend

the complaint.

On April 3, 2012, Plaintiff was granted leave to file

an amended complaint (the "AC") to include all relevant claims.

Citibank was also granted leave to file an answer to the AC and

assert a counterclaim in that pleading.  In consideration of the

multiple pending lawsuits, the Court advised Plaintiff to

dismiss the Small Claims Action and suggested that Citibank

should secure an order dismissing the City Court Action in order

to facilitate one court as the exclusive forum in which the

parties' disputes would be resolved.

Plaintiff and Citibank again appeared before this

Court on October 24, 2012 for a status conference, at which time

the Court established an expedited timetable for the completion

of discovery and suggested that depositions of Plaintiff and one

representative from Citibank should be sufficient.  Plaintiff

raised no objection to the court ordered deposition.  Plaintiff

filed the AC that day.  (See Bernhard Decl. Ex. A).

5

On October 25, 2012 Citibank served an answer to the
AC with affirmative defenses and counterclaims and served a
deposition notice on the Plaintiff.  (See id. Exs. B-C).

On November 6, 2012 Plaintiff served a "Reply
Affirmation in Opposition to Defendant's Request for Deposition
and Motion for Protective Order" (the "Motion") by which he
contended that, because he is pro se, he should not be required
to submit to a deposition. (See id. Ex. D).  The Motion sought a
protective order because Plaintiff contended that he was unable
to "obtain an attorney to attend the deposition[,]" that a "a
deposition by oral examination considering that the plaintiff is
pro se would be wrong[,]" and that the deposition "would be more
burden than the plaintiff can handle."  (Id.).

According to Citibank, on November 8, 2012, Plaintiff
appeared at a hearing of the Small Claims Action and "explicitly
advised he would not submit to a deposition unless directed to
do so by the Court."  (Id. Ex. E).

By an order dated November 15, 2012, this Court denied
the Motion, and directed Plaintiff to appear for a deposition on

6

November 29, 2012 (the "November 15 Order").  The November 15

Order instructed Plaintiff to testify about "any

nonprivileged matter that is relevant to claims and/or defenses

in this matter." (See id. Ex. E).  Citibank's counsel scheduled

and paid for fees for a court reporter in preparation for the

Plaintiff's deposition.  Plaintiff, however, failed to appear

for his deposition on November 29, 2012.


On November 28, 2012, Plaintiff sent a "Memorandum and

Note of Issue" (the "November 28 Submission"), in which he

acknowledged receipt of the November 15 Order but reiterated his

objection to the deposition.  (See id. Ex. F).  The November 28

Submission stated that "nothing is fair about letting the

defendant interrogate me in their own office[,]" and that the

deposition "would be more trauma than I can handle and open the

door for further abuse of power. . . ." (Id.).


On January 18, 2013, Defendant moved to strike the AC

and/or have the action dismissed in its entirety with prejudice

based on Plaintiff's failure to appear for his deposition and

allegedly willful disobedience of the November 15 Order.  On

March 7, 2013, this Court issued the March 7 Opinion, granting

in part and denying in part the Defendant's first motion seeking

an order dismissing the action with prejudice and/or striking
the Plaintiff's complaint.  Specifically, the Court ordered:

> . . . Plaintiffs deposition shall be held on a date
> mutually agreeable to the parties on or before 20 days
> of this Order.  Plaintiff is directed to appear for
> his deposition and cooperate fully in answering
> questions regarding any nonprivileged matters relevant
> to the claims or defenses in this action.  Any failure
> by the Plaintiff to cooperate with scheduling the
> deposition, to appear for the deposition or to follow
> the terms of this Order, may result in dismissal of
> the case with prejudice and/or sanctions in the form
> of reasonable costs that the Defendant will incur in
> scheduling the deposition, including but not limited
> to court reporter fees and attorneys' fees.

(March 7 Opinion at 10-11).

In ordering the Plaintiff's deposition by March 27,
2013, the Court held that Defendant "has submitted sufficient
evidence that Plaintiff exhibits an apparent unwillingness to
participate fully in the discovery process." (Id. at 10).   The
March 7 Opinion also noted that the Plaintiff "knowingly and
willfully refused to participate in his deposition" despite the
Court's Order. (Id.).  However, the Court held that "[i]n
consideration of Plaintiff's pro se status, and upon review of
the record, the extreme sanction of dismissal of this action is
not appropriate at this time." (Id.).

8

According to the Defendant, it commenced arranging the Plaintiff's deposition by sending various letters and notices to the Plaintiff via overnight mail, regular mail and email. First, Defendant sent a March 12, 2013 letter (the "March 12 Letter") enclosing the March 7 Opinion and offered two dates for the deposition, either March 21, 2013 or March 22, 2013. (See Bernhard Decl., Ex. J). Defendant contends that Plaintiff failed and refused to respond to the March 12 Letter. Instead, Plaintiff sent a purported deposition notice to Defendant for a deposition in April or May 2013. (See id., Ex. K, Plaintiff's Notice to Take Deposition Upon Oral Examination).

According to the Defendant, it sent another letter to Plaintiff on March 15, 2013 advising that his deposition was set for March 22, 2013 and enclosed a Continued Notice to Take Deposition Upon Oral Examination of Plaintiff Edward F. Davis (the "March 15 Letter"). (See id., Ex. L).

According to the Defendant, it sent another letter to the Plaintiff on March 18, 2013 advising that a Citibank deposition would not go forward because the fact discovery period had expired. (See id., Ex. M). Defendant contends that the Plaintiff telephoned Defendant's counsel on March 19, 2013

9

and stated that he refused to appear on March 22, 2013.
Defendant maintains that Citibank's counsel reiterated that the
March 7 Opinion required the deposition to be held no later than
March 27, 2013.

On March 22, 2013, Plaintiff failed to appear for his
deposition.  According to the Defendants, it had a court
reporter present and was ready to proceed with the deposition.

On April 2, 2013, Plaintiff sought to extend discovery
and submitted a "Plaintiff's Memorandum and Request to Extend
Discovery" to the Court.  (See id., Ex. N).  In his request,
Plaintiff alleged that Defendant's counsel "has taken advantage
of [his] pro se [status] from the beginning of discovery
purporting to be the decision maker in matters of the court and
misconstruing the rules of the court in correspondence with
[the] pro se."  (Id. at 1).  Plaintiff also accused Defendant's
counsel of "falsif[ying] and contents of his letters in an
attempt to lead the court to believe that the plaintiff is
solely at fault for delaying court proceedings . . . ."  (Id. at
2).  Plaintiff requests that "discovery should remain open
without limitation for as long as it takes to organize and
execute the depositions."  (Id. at 3).

**The Relevant Standard**

It is well settled that a district court has "inherent
power to regulate litigation, preserve and protect the integrity
of the proceedings before it, and sanction parties for abusive
practices." Turner v. Hudson Transit Lines, Inc., 142 F.R.D.
68, 72 (S.D.N.Y. 1991).  Sanctions for failure to comply with a
court order is governed by Rule 37(b)(1) of the Federal Rules of
Civil Procedure, which states that when a court "orders a
deponent to be sworn or to answer a question and the deponent
fails to obey, the failure may be treated as contempt of court."
Fed. R. Civ. P. 37(b)(1).  Sanctions are also available, upon
motion, for a party's failure to attend his own deposition.  Fed
R. Civ. P. 37(d)(1)(A)(i).

A wide spectrum of sanctions is provided for by Rule
37.  The appropriateness of a given sanction is not guided by
any clearly defined rule or doctrine but should be just, and
should serve the guidelines outlined by the Second Circuit in
Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67 (2d
Cir. 1988).  Update Art outlined three purposes of Rule 37
sanctions: (1) they insure that a party will not benefit from

11

failure to comply with discovery requests, (2) they are specific deterrents in a case to a particular party, and (3) they have "a general deterrent effect on the case at hand and on other litigation . . . ." Id. at 71.


Similarly, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with . . . any order of the court." Fed. R. Civ. P. 41(b). The Second Circuit has cautioned that dismissal under Rule 41(b) "is a harsh remedy and is appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996). The following factors are to be considered by the district court prior to dismissing a case for failure to comply with a court order:


> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

12

Lucas, 84 F.3d at 535.


        The level of intentionality goes directly to the
degree of severity of any sanction that may be warranted.
Dismissal requires a showing of "willfulness, bad faith, or any
fault" on the part of the sanctioned party.  See Jones v. NFTA,
836 F.2d 731, 734 (2d Cir. 1987) (internal quotation marks and
citation omitted).  An adverse inference sanction may also be
predicated on a finding of intentional misconduct, or fault in
the form of gross negligence.  See Reilly v. Natwest Markets
Group Inc., 181 F.3d 253, 267-68 (2d Cir.1999). In determining
the degree of severity of the sanction warranted by the
particular level of intentionality, the best approach is a
"case-by-case" one.  Id. at 267.


        A court must be cognizant of the special latitude that
pro se litigants may be awarded.  See e.g., Lucas, 84 F.3d at
535 (explaining that district courts should "dismiss a pro se
litigant's complaint only when circumstances are sufficiently
extreme."); Webb v. Bermudez, No. 92 Civ. 7305, 1996 WL 599673,
at *1 (S.D.N.Y. Oct. 17, 1996) (stating that "dismissal against
pro se litigants should be granted only when they deliberately

13

frustrate the process, not when they do so through a misunderstanding."). However, "'[a]ll litigants, including pro ses, have an obligation to comply with court orders,' and failure to comply may result in sanctions, including dismissal with prejudice." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (citing Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir. 1990)). A party's status as a pro se litigant does not excuse that party from having to comply with a court's rules and orders. See Greenblatt v. Gluck, 265 F. Supp. 2d 346, 350 (S.D.N.Y. 2003) (stating that "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law."). "[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court action." McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988). Thus, "dismissal of a pro se litigant's action may be appropriate 'so long as a warning has been given that non-compliance can result in dismissal.'" Id. (citing Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir. 1994)).

**Plaintiff Has Failed to Comply with the March 7 Opinion**

14

A review of the communications between the parties
indicates that the Plaintiff understood this Court's orders,
including the November 15 Order and the March 7 Opinion. As
discussed in the March 7 Opinion, in denying Plaintiff's motion
for a protective order, this Court "provided adequate notice
with regard to Plaintiff's deposition, including the date in
which he was to appear." (March 7 Opinion at 10). Instead of
complying with the November 15 Order, Plaintiff knowingly and
willfully refused to participate in his deposition and repeated
his refusal in his November 28 Submission to the Court. (See
id.).

As demonstrated by the March 7 Opinion, this Court has
extended every opportunity for Plaintiff to avoid the sanction
of dismissal and have a fair chance to be heard. Despite
Plaintiff's knowing and willful refusal to cooperate with a
previous order, this Court declined to dismiss the action at
that time. Instead, in recognition of Plaintiff's pro se
status, this Court directed him, yet again, to cooperate in the
scheduling of his deposition. The March 7 Opinion explicitly
warned that "[a]ny failure by the Plaintiff to cooperate with
scheduling his deposition, to appear for the deposition or to
follow the terms of this order, may result in dismissal of the

15

case with may result in dismissal of the case with prejudice
and/or sanctions in the form of reasonable costs that the
Defendant will incur in scheduling the deposition, including but
not limited to court reporter fees and attorneys' fees."   (Id.
at 10-11).


        Plaintiff continues to exhibit an apparent
unwillingness to participate fully in the discovery process and
has fragrantly ignored several orders by this Court directing
Plaintiff to cooperate in scheduling his deposition.   Since the
October 25, 2012 status conference, over eight months ago, in
which this Court initially outlined the timetable for discovery
and for scheduling depositions, Plaintiff has repeatedly defied
all of this Court's orders.   In addition, Plaintiff's request to
extend discovery offers no reasons as to why "discovery should
remain open without limitation" and instead makes bald and
unsubstantiated accusations against Defendant's counsel, without
any supporting evidence as to the alleged falsification of dates
or letters.


        Taken together, Plaintiff's noncompliance and refusal
to cooperate with discovery amounts to a "sustained and willful

intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in the dismissal of [the] action." Valentine, 29 F.3d at 50.  Accordingly, the Plaintiff's request to extend discovery is denied, the AC is stricken and the action is dismissed with prejudice.

**Default Judgment is Denied**

Defendant has also moved for default judgment on its counterclaim against the Plaintiff.  As the Defendants points out, Plaintiff has failed to answer Defendant's counterclaim, in accordance with Rule 12(a)(1)(B) of the Federal Rules of Civil Procedure, which requires a party to answer a counterclaim within 21 days of being served.  Citibank filed and served its answer and counterclaim on October 25, 2012.  Despite the passage of over eight months, Plaintiff has failed to serve a reply to Citibank's counterclaim.

As a general rule, defaults are not favored and any doubts should be resolved in favor of setting aside a default so

that a determination may be made on the merits of the case.
Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). All doubts
are to be resolved in favor of the party seeking relief from
judgment to facilitate resolution of disputes on their merits.
See Sony Corp. v. S.W.I. Trading, Inc., 104 F.R.D. 535, 539-40
(S.D.N.Y. 1985). However, "'when the adversary process has been
halted because of an essentially unresponsive party,'" default
judgment is appropriate to protect the non-defaulting party from
"'interminable delay and continued uncertainty as to his
rights.'" Id. (quoting H.F. Livermore Corp. v.
Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir.
1970)).


    In exercising its discretion in determining whether an
entry of default judgment is warranted, the district court is to
apply a three-part test:  "(1) whether the default was willful;
(2) whether setting aside the judgment would prejudice the
adversary; and (3) whether a meritorious defense is presented."
Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 96 (2d Cir. 1993).


    In the present case, Plaintiff has chosen not to
respond or to otherwise defend himself against Defendant's

18

counterclaim.  Despite multiple submissions to the Court,
Plaintiff has not presented any explanation for his default nor
addressed Citibank's claim as to Plaintiff's unpaid and
delinquent account balance of $5,388.09.  However, considering
his pro se status and the parties' submissions, it is unclear
whether the Plaintiff was aware that he was potentially liable
for the account balance if he did not respond within a set
period of time.  Defendant has also not produced any documents
demonstrating that they notified the Plaintiff that he had
failed to answer its counterclaim.  See Original Appalachian
Artworks, Inc. v. Yuil Int'l Trading Corp., 105 F.R.D. 113, 116
(S.D.N.Y. 1985) (stating that only "[w]here a party is notified
that he is in default and he apparently makes no effort to
appear pro se or to explain his situation to the opposing party
and to the court, [then] such neglect is inexcusable.").


          According, default judgment on Defendant's
counterclaim is not warranted at this time.  Meehan, 652 F.2d at
277 (noting that "default judgment is a drastic remedy, a weapon
of last, rather than first, resort.").



**Conclusion**

19

For the foregoing reasons, the Defendant's motion is granted and the action is dismissed with prejudice; Defendant's motion for default judgment is denied without prejudice; and Plaintiff's request for an extension of discovery is denied.

It is so ordered.

New York, NY
July/2, 2013

ROBERT W. SWEET
U.S.D.J.

20