UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

EDWARD F. DAVIS,

                    Plaintiff,

        -against-

                                                    12 Civ. 1678

CITIBANK, N.A.,

                                                    OPINION

                    Defendant.

------------------------------------------X

A P P E A R A N C E S:

                Attorneys for the Defendant

        ZEICHNER ELLMAN & KRAUSE LLP
        575 Lexington Avenue
        New York, NY 10022
        By:  Barry J. Glickman, Esq.
             Greg M. Bernhard, Esq.

        Pro Se
        EDWARD F. DAVIS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1-2-14

**Sweet, D.J.**

Defendant Citibank, N.A. ("Citibank" or the "Defendant") has moved pursuant to Fed. R. Civ. P. 56 for summary judgment on its counterclaim against pro se Plaintiff Edward F. Davis ("Davis" or the "Plaintiff").  Plaintiff has moved for a stay of the proceedings under Rule 62(c) of the Federal Rules of Civil Procedure.

Upon the facts and conclusions set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

**<u>Prior Proceedings</u>**

On September 26, 2011, Citibank commenced an action, seeking to recover a sum in excess of $6,664.09, which was due in connection with the Account.  *See Citibank, N.A. v. Edward F. Davis*, No. CV-11-1015, City Court of the City of Newburgh (the "City Court Action").

On December 30, 2011, Plaintiff served an answer to the City Court Action.  On October 21, 2011, instead of asserting a counterclaim in the City Court Action, Plaintiff commenced an action in New York County, in which he alleged

1

"multiple violations of consumer credit act and overcharges." *Edward F. Davis v. Citibank, N.A.,* No. 3362 NSC 2011, Civil Court, New York County (the "Small Claims Action").

On February 13, 2012, Plaintiff commenced another action in New York County. *Edward F. Davis v. Citibank, N.A.*, No. 101622/12, Supreme Court, New York County (the "State Court Action"). In the State Court Action complaint, Plaintiff alleged that Citibank used "unfair . . ., unconscionable . . . and harassing, threatening and otherwise abusive conduct" to collect a debt (State Court Action Compl. ¶¶ 8, 9). In addition, Plaintiff alleges violations of "consumer credit protection laws" (*Id.* ¶ 3). On March 7, 2012, Citibank removed the State Court Action to this Court.

At the time Plaintiff commenced the State Court Action he represented to Citibank that he would execute a stipulation of discontinuance of the Small Claim Action. Plaintiff advised the court in the Small Claims Action of his intention to do so, in order for his claims to be resolved in one action and in one forum. Accordingly, counsel for Citibank in the City Court Action sent Plaintiff stipulations of discontinuance for both the Small Claims Action and the City Court Action.

By a notice of motion dated March 21, 2012, Plaintiff sought leave to amend the complaint in the instant action to assert claims against Citibank of harassment and unfair debt collection practices.  On March 28, 2012, Citibank wrote to the Court regarding its desire to assert its claim from the City Court Action against Plaintiff in a counterclaim once the City Court Action, Small Claims Action and State Court Action were each dismissed and requested a conference with the Court to address Citibank's counterclaim and Plaintiff's motion to amend the complaint.

On April 3, 2012, Plaintiff was granted leave to file an amended complaint (the "AC") to include all relevant claims. Citibank was also granted leave to file an answer to the AC and assert a counterclaim in that pleading.  In consideration of the multiple pending lawsuits, the Court advised Plaintiff to dismiss the Small Claims Action and suggested that Citibank should secure an order dismissing the City Court Action in order to facilitate one court as the exclusive forum in which the parties' disputes would be resolved.

Plaintiff and Citibank again appeared before this Court on October 24, 2012 for a status conference, at which time the Court established an expedited timetable for the completion

3

of discovery and suggested that depositions of Plaintiff and one representative from Citibank should be sufficient.  Plaintiff raised no objection to the court ordered deposition.  Plaintiff filed the AC that day.  (*See* Bernhard Decl. Ex. A.)

On October 25, 2012 Citibank served an answer to the AC with affirmative defenses and counterclaims and served a deposition notice on the Plaintiff.  (*See id.* Exs. B-C.)

On November 6, 2012 Plaintiff served a "Reply Affirmation in Opposition to Defendant's Request for Deposition and Motion for Protective Order" by which he contended that, because he is *pro se,* he should not be required to submit to a deposition. (*See id.* Ex. D.)  The Motion sought a protective order because Plaintiff contended that he was unable to "obtain an attorney to attend the deposition[,]" that a "a deposition by oral examination considering that the plaintiff is pro se would be wrong[,]" and that the deposition "would be more burden than the plaintiff can handle."  (*Id.*)

According to Citibank, on November 8, 2012, Plaintiff appeared at a hearing of the Small Claims Action and "explicitly advised he would not submit to a deposition unless directed to do so by the Court."  (*Id.* Ex. E.)

4

By an order dated November 15, 2012, this Court denied the Motion, and directed Plaintiff to appear for a deposition on November 29, 2012 (the "November 15 Order"). The November 15 Order instructed Plaintiff to testify about "any non-privileged matter that is relevant to claims and/or defenses in this matter." (*See id.* Ex. E.) Citibank's counsel scheduled and paid for fees for a court reporter in preparation for the Plaintiff's deposition.

On November 28, 2012, Plaintiff sent a "Memorandum and Note of Issue" (the "November 28 Submission"), in which he acknowledged receipt of the November 15 Order but reiterated his objection to the deposition. (*See id.* Ex. F). The November 28 Submission stated that "nothing is fair about letting the defendant interrogate me in their own office[,]" and that the deposition "would be more trauma than I can handle and open the door for further abuse of power. . . ." (*Id.*). Plaintiff did not appear for his deposition on November 29, 2012.

On January 18, 2013, Defendant moved to strike the AC and/or have the action dismissed in its entirety with prejudice based on Plaintiff's failure to appear for his deposition and allegedly willful disobedience of the November 15 Order. On

5

March 7, 2013, this Court issued the March 7 Opinion, granting

in part and denying in part the Defendant's first motion seeking

an order dismissing the action with prejudice and/or striking

the Plaintiff's complaint.  Specifically, the Court ordered:

> . . . Plaintiff's deposition shall be held on a date
> mutually agreeable to the parties on or before 20 days
> of this Order.  Plaintiff is directed to appear for
> his deposition and cooperate fully in answering
> questions regarding any non-privileged matters
> relevant to the claims or defenses in this action.
> Any failure by the Plaintiff to cooperate with
> scheduling the deposition, to appear for the
> deposition or to follow the terms of this Order, may
> result in dismissal of the case with prejudice and/or
> sanctions in the form of reasonable costs that the
> Defendant will incur in scheduling the deposition,
> including but not limited to court reporter fees and
> attorneys' fees.

(March 7 Opinion at 10-11.)


In ordering the Plaintiff's deposition by March 27,

2013, the Court held that Defendant "has submitted sufficient

evidence that Plaintiff exhibits an apparent unwillingness to

participate fully in the discovery process." (*Id.* at 10.)  The

March 7 Opinion also noted that the Plaintiff "knowingly and

willfully refused to participate in his deposition" despite the

Court's Order. (*Id.*)  However, the Court held that "[i]n

consideration of Plaintiff's *pro se* status, and upon review of

6

the record, the extreme sanction of dismissal of this action is not appropriate at this time." (*Id.*)

According to the Defendant, it commenced arranging the Plaintiff's deposition by sending various letters and notices to the Plaintiff via overnight mail, regular mail and email. First, Defendant sent a March 12, 2013 letter (the "March 12 Letter") enclosing the March 7 Opinion and offered two dates for the deposition, either March 21, 2013 or March 22, 2013. (*See* Bernhard Decl., Ex. J.)  Defendant contends that Plaintiff failed and refused to respond to the March 12 Letter.  Instead, Plaintiff sent a purported deposition notice to Defendant for a deposition in April or May 2013. (*See id.*, Ex. K, Plaintiff's Notice to Take Deposition Upon Oral Examination.)

According to the Defendant, it sent another letter to Plaintiff on March 15, 2013 advising that his deposition was set for March 22, 2013 and enclosed a Continued Notice to Take Deposition Upon Oral Examination of Plaintiff Edward F. Davis (the "March 15 Letter"). (*See id.*, Ex. L.)

Defendant contends that the Plaintiff telephoned Defendant's counsel on March 19, 2013 and stated that he refused to appear on March 22, 2013.  Defendant maintains that

7

Citibank's counsel reiterated that the March 7 Opinion required
the deposition to be held no later than March 27, 2013.

On March 22, 2013, Plaintiff failed to appear for his
deposition.  According to the Defendant, a court reporter was
present and ready to proceed with the deposition on that date.

On April 2, 2013, Plaintiff sought to extend discovery
and submitted a "Plaintiff's Memorandum and Request to Extend
Discovery" to the Court.  (See id., Ex. N.)  In his request,
Plaintiff alleged that Defendant's counsel "has taken advantage
of [his] pro se [status] from the beginning of discovery
purporting to be the decision maker in matters of the court and
misconstruing the rules of the court in correspondence with
[his] pro se" status.  (Id. at 1.)  Plaintiff also accused
Defendant's counsel of "falsif[ying] contents of his letters in
an attempt to lead the court to believe that the plaintiff is
solely at fault for delaying court proceedings . . . ."  (Id. at
2.)  Plaintiff requested that "discovery should remain open
without limitation for as long as it takes to organize and
execute the depositions."  (Id. at 3.)

On July 15, 2013, Plaintiff's claims were dismissed
with prejudice, Plaintiff's request for an extension of

8

discovery was denied, and Defendant's motion for default

judgment on its counterclaim was denied.  The only remaining

claim is Defendant's counterclaim for the account balance.

On August 13, 2013, prior to Citibank filing its

summary judgment motion, Plaintiff filed a notice of appeal with

the United States Court of Appeals for the Second Circuit.

Plaintiff did not pay the appellate filing fee but filed a

September 16, 2013 motion to proceed in forma pauperis.

Plaintiff did not assert that the Order was a final judgment, as

claims are still spending.  Although not specified by the

Plaintiff, the Appeal appears to seek interlocutory relief as

opposed to an appeal as of right.

On September 10, 2013, Defendant submitted the instant

motion for summary judgment on its counterclaim.  On October 8,

2013, Plaintiff filed a motion for a stay of the proceedings

pending the outcome of his appeal.  Both motions were marked

fully submitted on October 16, 2013.

**Facts**

Familiarity with the general background of this case

between the parties is assumed.  The facts underlying this

action were previously set forth in this Court's opinions dated March 7, 2013, *see Davis v. Citibank, N.A.,* No. 12 Civ. 1678, 2013 WL 866862 (S.D.N.Y. Mar. 8, 2013) (the "March 7 Opinion") and July 15, 2013, *see Davis v. Citibank*, 2013 WL 3656078 (S.D.N.Y. Jul. 15, 2013) (the "July 15 Opinion"), and are repeated in part as relevant to the instant motion.

This matter involves a $4,506.09 delinquent Sears MasterCard credit card account ending in 4729 (the "Account"). It is undisputed that Plaintiff opened the Account, used the Account and then failed to pay the Account.  (*See* Citibank's Declaration in Support of Summary Judgment (the "Decl.").)  The Account, branded as a Sears MasterCard account, is owned by Citibank.  (Decl. ¶3.)

After the Account was opened, the Plaintiff made charges and payments on the Account, which is confirmed in the April 2009 to August 2011 Account statements ("Account Statements").  (Decl. ¶6, Ex. B.)  The Account was closed in April 2011, and the terms and conditions governing the Account at the time it became delinquent is attached to Citibank's Declaration as Exhibit A (the "Card Agreement").  (Decl. ¶5.)

10

As confirmed in the Account Statements, beginning in November 2010, Plaintiff failed to make the minimum payment due on the Account and continued with this failure up and until the filing of Citibank's initial motion.  (Decl. ¶8.)

**Applicable Standard**

1. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> [summary] judgment . . . shall be rendered forthwith if the pleadings, depositions, answer to the interrogatories, and admission on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56.

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 338 (2d Cir. 2004).  In

11

determining whether a genuine issue of material fact does exist, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Gibbs-Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir. 2002).

In addition, courts do not try issues of fact on a motion for summary judgment, but rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for" the plaintiff. *Andaya v. Atlas Air, Inc.,* No. 10 CV 7878, 2012 WL 1871511, at *2 (S.D.N.Y. Apr. 30, 2012).

2. Stay of the Proceedings

Under Rule 62, the factors regulating issuance of a stay are generally: (1) likelihood of success on the merits; (2)

12

threat of irreparable injury; (3) likelihood the stay will harm other parties; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Katz v. Feinberg*, 2001 WL 1132018, at *3-4 (S.D.N.Y. 2001).

## I. **Plaintiff is Not Entitled to a Stay Because He has Not Demonstrated Likelihood of Success on the Merits or Harm**

Plaintiff does not specify which section of Rule 62 the Stay Motion is based upon, but requests a stay due to the purported misconduct of the Defendant's attorneys and because he has filed an appeal.

The determination whether to enter a stay pending an interlocutory appeal is within the discretion of the District Court. *Nken v. Holder,* 556 U.S. 418, 129 S.Ct. 1749, 1760, 173 L.Ed.2d 550 (2009). The four oft-cited criteria are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 1761 (citation omitted). While stated in these terms, the test contemplates that a movant may be granted relief even if it

13

demonstrates something less than a likelihood of success on the merits of its appeal.  Thus, if it shows "serious questions" going to the merits of its appeal as well as irreparable harm, the stay may be granted if the balance of hardships "tips decidedly" in favor of the moving party. *See, e.g., Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 34–38 (2d Cir. 2010). Similarly, the stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm. *See, e.g., Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir.2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay.") (citation omitted). Nonetheless, the movant cannot prevail by showing a mere possibility of success or of harm. *Nken,* 129 S.Ct. at 1761.

     Plaintiff has failed to show a likelihood of success on the merits.  Plaintiff has failed to pay the fee for the appeal, and the appeal is premature and interlocutory since all claims have not yet been adjudicated.  Regardless, Plaintiff's appeal does not raise substantial issues or questions.  As demonstrated by the March 7 and July 15 Opinions, this Court has extended every opportunity for Plaintiff to avoid the sanction

14

of dismissal and have a fair chance to be heard.  Despite

Plaintiff's knowing and willful refusal to cooperate with a

previous order, this Court declined to dismiss the action on

March 7, and declined to grant Defendant's default motion on

July 15.  Instead, in recognition of Plaintiff's *pro se* status,

this Court directed him, yet again, to cooperate in the

scheduling of his deposition. The March 7 Opinion explicitly

warned that "[a]ny failure by the Plaintiff to cooperate with

scheduling his deposition, to appear for the deposition or to

follow the terms of this order, may result in dismissal of the

case with prejudice and/or sanctions in the form of reasonable

costs that the Defendant will incur in scheduling the

deposition, including but not limited to court reporter fees and

attorneys' fees."  (March 7 Opinion at 10-11.)


Since the October 25, 2012 status conference, over a

year ago to date, in which this Court initially outlined the

timetable for discovery and for scheduling depositions,

Plaintiff has repeatedly defied all of this Court's orders. In

addition, Plaintiff's request to extend discovery offers no

reasons as to why "discovery should remain open without

limitation" and instead makes bald and unsubstantiated

accusations against Defendant's counsel, without any supporting

evidence as to the alleged falsification of dates or letters.

15

Taken together, Plaintiff's noncompliance and refusal to cooperate with discovery amounts to a "sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in the dismissal of [the] action." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir. 1994). Plaintiff has not since offered any explanation for his noncompliance, or presented any evidence to support his claims that Defendant's attorneys were "unfair . . ., unconscionable . . . and harassing, threatening and otherwise abusive conduct" to collect a debt, despite multiple opportunities. (State Court Action Compl. ¶¶ 8, 9). As such, Plaintiff has failed to offer any reason why an appeal would prove successful.

Plaintiff's claim of irreparable harm reduces to the assertion that it will cost him money if the summary judgment motion is granted. In this case, this is money that Defendant's are rightfully owed and have been seeking for several years. Plaintiff has been given numerous opportunities to participate in the discovery process and present his case, and has not abided by any of them. It is in the interests of judicial economy that civil litigants adhere to the court rules.

16

Because there are no factors mitigating in favor of a stay, Plaintiff's motion for a stay is denied.  *See In re Albicocco*, 2006 WL 2620464, *5 (E.D.N.Y. Sept. 13, 2006) (denying application for a stay pending appeal because movant had not shown likelihood of success or harm).

## II.  Citibank is Entitled to an Award for the Unpaid Account Balance Plus Attorney Fees

Citibank contends that it is entitled to recover the amount owed on the Account in addition to attorneys' fees and costs under three theories: (1) breach of contract; (2) account stated; and (3) unjust enrichment.  Each will be addressed in turn[1].

### 1. Breach of Contract

Under South Dakota law[2], the elements of a breach of contract claim are: "(1) an enforceable promise; (2) a breach of the promise; [and] (3) resulting damages."  *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (S.D. 2005).  When a

---

[1] Plaintiff contends that Citibank's motion is untimely because it was filed more than 30 days after the July 15, 2013 opinion.  There is no support for this assertion, and Defendant's motion is timely.

[2] South Dakota law applies pursuant to the Card Agreement.  (Decl. ¶5, Ex. A.)

party fails to fully perform a contract, they are in breach.
*See, e.g.*, *Mathis Implement Co. v. Heath*, 665 N.W.2d 90, 92
(S.D. 2003).

Here, there is no dispute that Plaintiff opened the
account, entered into the Card Agreement governing the Account,
and that Citibank performed by extending credit to Plaintiff.
In Plaintiff's answer, which is untimely, he admits to the
Account, the incurred charges, and that he did not pay the
minimum payments.  The Account Statements confirm this.  (Decl.
¶5, Ex. A.)  Further, as a result of Plaintiff's failure to pay,
Citibank has been damaged by not being paid the Account balance,
interest on that balance and has incurred attorney fees.
Citibank is thus entitled to the award sought in its
counterclaim.

### 2. Account Stated

Citibank is also entitled to judgment based upon an
account stated cause of action.  South Dakota recognizes account
stated claims.  *Osborne v. Strinham*, 1 S.D. 406; 47 NW 408
(1890).  The elements of account stated are well established and
all present here: (1) transactions between the parties which
give rise to an indebtedness of one to the other; (2) an

18

agreement, express or implied, between them fixing the amount
due; and (3) a promise, express or implied, by the one to be
charged, to pay such indebtedness.

The Account Statements confirm a series of
transactions between the parties, each reflecting the amount due
on the Account, and prove Plaintiff's indebtedness owed to
Citibank.  Plaintiff's agreement, express or implied, is
confirmed by his use of the Account.  Because Plaintiff broke
the Account Stated contract that was formed, Citibank is owed
recovery.

### 3. Unjust Enrichment

To recover under an unjust enrichment theory, a party
must prove: (1) the defendants were enriched, (2) at plaintiff's
expense, and (3) that "it is against equity and good conscience
to permit . . . defendant(s) to retain what is sought to be
recovered."  *Miller v. Jacobsen*, 714 N.W.2d 69, 81 (S.D. 2006).

Because Citibank's motion is granted and Defendant is
awarded the balance owed on the Account, including finance
charges and fees, unjust enrichment is inapplicable.

19

4. <u>Citibank is Entitled to Recover its Fees, Costs and Expenses</u>

Under South Dakota law, because the Card Agreement provides for attorneys' fees and costs, such an award is appropriate. *See* South Dakota Laws Title 15-17-38 ("The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceeds is left to the agreement, express or implied, of the parties.").

The Card Agreement entitles Citibank to recover its attorneys' fees and costs:

> COLLECTION COSTS:
>
> To the extent permitted by law, you are liable to us for our legal costs if we refer collection to your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

(Decl. ¶5, Ex. A.)  Citibank's requested award of attorneys' fees and costs, totaling $4,021.84 to date, is therefore granted.

20

**Conclusion**

For the reasons set forth above, Plaintiff's motion for a stay is denied, and Citibank is awarded the debts owing on the Account of $44,021.84, plus costs, attorneys' fees, and expenses of $4,506.09, for a total judgment of $48,527.93.

It is so ordered.

New York, NY
December 16, 2013

_____
ROBERT W. SWEET
U.S.D.J.

21